J-S28015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| S.R., JR. | |
| Appellant | No. 1837 WDA 2016 |

Appeal from the Order October 25, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 12-008542-016

BEFORE:  OLSON, MOULTON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED JUNE 23, 2017**

S.R., Jr., ("Father") appeals from the order entered on October 25, 2016 awarding him shared legal custody of E.R. ("Child") (born in January 2008) with L.R. ("Mother"), primary physical custody to Mother, and partial physical custody to Father on a supervised, community visit basis.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> This case centers on the Child's allegations that Father sexually abused her.  The first sign of potential abuse was detected by Maternal Grandfather in August of 2013 when the Child made disconcerting comments.  The Child was six [] years old at the time.  Maternal Grandfather testified that the Child told him he could touch her in her privates.  On August 17, 2013, Maternal Grandfather informed Mother of the Child's comments.  Mother testified that she and the Child were scheduled to attend an event on August 18, 2013 so she planned to discuss the comments with the Child afterward.  Mother stated that while at the event, the Child tripped over a small dog and proceeded to

* Retired Senior Judge assigned to the Superior Court.

have an emotional meltdown for fear that she had harmed the dog. Mother testified that this behavior was unusual for the Child. Mother stated that once they returned home she discussed the comments with the Child and asked her who touches her like that. The Child responded that [Father does].

Mother further testified that after the disclosure the Child's demeanor changed. The Child had become closed off and angry, sometimes violent. Mother stated that the Child seemed to have a sexual curiosity that wasn't there before and that she began to look at her body parts in the mirror. The [trial c]ourt found Mother to be credible in her testimony.

The Child was eight [] years, old at the time of trial. She testified that she understood the difference between truth and lies. At trial, the Child was asked if she enjoys her visits with Father and she responded that she did. She further stated that she likes that she gets to talk to him for a little bit at the visits. When she was asked, however, if she would like to see Father more often she stated that she thinks it's fine just the way it is. She testified that she's not afraid of Father, but that sometimes she gets nervous during visits with him. The Child was asked what type of activities she enjoys doing with Mother and indicated that she likes when they go swimming. When she was asked if she would like to go swimming with Father, the Child responded "maybe if someone is with us." The Child was asked if Father had hurt her. She testified that he had but that she did not remember what happened. The Child testified that she does remember telling Mother about the incident but does not remember what she disclosed. The Child indicated that Mother remembers what was said and that Mother is telling the truth. Father denied all allegations of sexual abuse.

Trial Court Opinion, 12/21/2016, at 4-5 (certain quotation marks and paragraph break omitted).

The procedural history of this case is as follows. Prior to Child's allegations of sexual abuse, the parties had an informal custody arrangement. After Mother learned of Child's allegations, she began withholding custody from Father. On November 22, 2013, Mother filed a

complaint requesting primary custody of Child. On January 3, 2014, Father filed a motion seeking reinstatement of his visits with Child. On January 24, 2014, the trial court ordered the parties to undergo psychological evaluations by Beth A. Bliss, Psy.D. That order also provided that Father could have supervised visits with Child every Sunday at McDonald's.

As a result of her evaluations, Dr. Bliss prepared a report. In that report, Dr. Bliss opined that Child was sexually abused. On August 15, 2014, Mother sought to terminate Father's supervised visits with Child. The trial court instead ordered that the supervised visitations occur at Three Rivers Adoption Council. A therapist at Three Rivers Adoption Council informed the trial court that Child disclosed that she had been the victim of sexual abuse. Thereafter, the trial court permitted Father to have weekly telephone conversations with Child and ordered Child and Father to have community visits prior to the supervised visits.

On March 8, 2016, the trial court increased the length of the community visits and awarded Father partial physical custody of Child twice per month. This partial physical custody was exercised at Arsenal Family & Children's Center. On October 5-6, 2016, a custody trial was held. On October 24, 2016, the trial court issued findings of fact and conclusions of law finding that Father sexually abused Child and awarding the parties shared legal custody, primary physical custody to Mother, and partial

physical custody to Father on a supervised, community visit basis. This timely appeal followed.[1]

Father raises four issues for our review:

1. Whether the trial court abused its discretion by certifying [Dr. Bliss] as an expert[?]

2. Whether the trial court abused its discretion by admitting and relying upon the expert report of [Dr. Bliss?]

3. Whether the trial court abused its discretion in admitting and relying upon an uncertified docket sheet to prove that [Father] was charged with a crime on a certain date and convicted of a certain crime[?]

4. Whether the trial court abused its discretion in finding that Child has been sexually abused by [Father?]

Father's Brief at 13.

In his first issue, Father argues that the trial court erred in certifying Dr. Bliss as an expert witness. "[T]he admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion." *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003) (citation omitted). Pennsylvania Rule of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] Father filed a concise statement of errors complained of on appeal contemporaneously with his notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i) and (b). On December 21, 2016, the trial court issued its Rule 1925(a) opinion. All of Father's issues were included in his concise statement.

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.Evid. 702. "The standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." *Commonwealth v. Kinard*, 95 A.3d 279, 288 (Pa. Super. 2014) (*en banc*) (citation omitted).

In this case, Father does not challenge the trial court's determination that Dr. Bliss' testimony would help it determine if Child were sexually abused by Father. *See* Pa.R.Evid. 702(b). Father also does not challenge the trial court's determination that Dr. Bliss' methodology is generally accepted in the field of psychology. *See* Pa.R.Evid. 702(c). Instead, Father argues that Dr. Bliss' lack of a license to practice psychology made her unqualified to be an expert witness in this case.

In 2007, Dr. Bliss received her undergraduate degree in psychology from Kent State University. In 2010, she received her master's in clinical psychology from Indiana University of Pennsylvania. In 2013, she received her doctorate in psychology from Indiana University of Pennsylvania. Prior to evaluating the parties in this case, Dr. Bliss completed training in child

custody, with a focus on sexual abuse. She also completed an internship where she concentrated on sex offenses and sex offenders. She has published three academic articles, including two which focused on children. When Dr. Bliss evaluated the parties in this case, she had yet to complete post-doctorate work required to become a licensed psychologist.

This extensive education and practical training provided Dr. Bliss with "scientific, technical, or other specialized knowledge [] beyond that possessed by the average layperson[.]" Pa.R.Evid. 702(a). Father's argument that, because at the time Dr. Bliss evaluated the parties she lacked a license to practice psychology and, therefore, was not qualified to give an expert opinion in this case, is without merit. "Pennsylvania courts have not held that licensing is a requirement for qualification of an expert." *Ford ex rel. Pringle v. Philadelphia Hous. Auth.*, 789 A.2d 360, 362 (Pa. Cmwlth. 2001), *appeal denied*, 803 A.2d 736 (Pa. 2002), *citing McClain v. Welker*, 761 A.2d 155 (Pa. Super. 2000). This child custody case is not governed by the Medical Care Availability and Reduction of Error Act, 40 P.S. § 1303.101 *et seq*. Therefore, the general rule that an expert need not be licensed as long as he or she possesses "scientific, technical, or other specialized knowledge [] beyond that possessed by the average layperson" applies. Pa.R.Evid. 702(a). As Dr. Bliss possesses such scientific, technical, or other specialized knowledge, we conclude that the trial court did not abuse its discretion in certifying Dr. Bliss as an expert witness.

In his second and third issues, Father challenges the trial court's admission of evidence. "The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa. Super. 2017) (citation omitted).

Father argues that the trial court erred in admitting Dr. Bliss' expert report.[2] He contends that the report was completed under the direct supervision of Dr. J. Anthony McGroarty and it required Dr. McGroarty's signature. He argues that since Dr. McGroarty failed to sign the report and was not available for cross-examination as required by Pennsylvania Rule of Civil Procedure 1915.8(a), the trial court abused its discretion in admitting and relying upon it. This argument is without merit. The record reflects that

_____

[2] Dr. Bliss' expert report is not included in the certified record. This Court's prothonotary contacted the trial court regarding this omission and was notified that the trial court did not include the report in the certified record because it contained confidential information and was sealed. A copy of Dr. Bliss' expert report is included as an attachment to Father's brief. As the trial court has confirmed that it has a copy of the report, Mother does not allege that the report attached to Father's brief is inaccurate, and this is a children's fast track case, we have utilized this copy to expedite disposition of this appeal. We remind Father's counsel that it is his responsibility to ensure that all materials necessary for our review are included in the certified record. *See Commonwealth v. Martz*, 926 A.2d 514, 525 (Pa. Super. 2007), *appeal denied*, 940 A.2d 363 (Pa. 2008). We also remind the trial court that it is required to transmit the entire certified record to this Court, including any documents that are confidential and/or sealed. *See* Pa.R.A.P. 1921.

Dr. Bliss submitted the expert report. The report is on her letterhead, not Dr. McGroarty's letterhead, and is signed by Dr. Bliss. Although Dr. McGroarty's name appears next to Dr. Bliss' name in the signature block, this is because Dr. Bliss had not yet received her license to practice psychology at the time she authored the report. As noted above, however, a license to practice psychology is not required in order for an individual to be admitted as an expert in a child custody dispute. Therefore, Dr. Bliss was permitted to author an expert report. She did so in this case and was subject to cross-examination. Rule 1915.8(a) only requires the author of an expert report to be subject to cross-examination. It does not require that any individual named in the expert report be subject to cross-examination. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Dr. Bliss' expert report into evidence.

Father next argues that the trial court erred in admitting docket sheets that showed he was convicted of driving under the influence ("DUI") in 2015. According to Father, the docket sheets were hearsay not subject to a recognized hearsay exception. We conclude that, even if the docket sheets were improperly admitted hearsay, such error was harmless.

"An error is harmless if it could not have contributed to the verdict[.]" *Commonwealth v. McClure*, 144 A.3d 970, 975–976 (Pa. Super. 2016) (citation omitted). In this case, the trial court used the docket sheets to show that Father was untruthful when he spoke to Dr. Bliss about his drug

and alcohol history. This evidence, however, was unnecessary for the trial court to determine that Father was untruthful when he spoke to Dr. Bliss. Specifically, Father testified that he was convicted of DUI in 2015. N.T., 10/6/16, at 416.[3] As such, the docket sheets were merely duplicative of Father's own admission at trial.

Father also argues that the trial court erred in considering Dr. Bliss' report and opinions which were based, in part, on these docket sheets. It is well-settled, however, that an expert witness may rely upon inadmissible hearsay when offering an expert opinion. *See* Pa.R.Evid. 703; *Commonwealth v. Brown*, 139 A.3d 208, 218 (Pa. Super. 2016), *appeal granted*, 2016 WL 7235309 & 2016 WL 7235589 (Pa. Dec. 14, 2016); *In re D.Y.*, 34 A.3d 177, 182–183 (Pa. Super. 2011), *appeal denied*, 47 A.3d 848 (Pa. 2012); *Boucher v. Pa. Hosp.*, 831 A.2d 623, 628 (Pa. Super. 2003), *appeal denied*, 847 A.2d 1276 (Pa. 2004); *Primavera v. Celotex Corp.*, 608 A.2d 515, 519–520 (Pa. Super. 1992), *appeal denied*, 622 A.2d 1374 (Pa. 1993); *Maravich v. Aetna Life & Casualty Co.*, 504 A.2d 896, 900–901 (Pa. Super. 1986); *Commonwealth v. Thomas*, 282 A.2d 693, 698 (Pa. 1971). An expert in psychology would reasonably rely upon docket sheets to determine if an individual was forthcoming about his or her drug

---

[3] The transcript from the October 5-6, 2016 hearing is continuously paginated. We cite to the correct date and the page number reflected on the transcript.

and/or alcohol use. As such, Dr. Bliss could rely upon the docket sheets even if they were inadmissible hearsay. Accordingly, any error in admitting the docket sheets was harmless.

In his final issue, Father argues that the trial court erred in concluding that he sexually abused Child. "We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility[,] . . . we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand." *E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015), *appeal denied,* 135 A.3d 586 (Pa. 2016) (citation omitted).

Appellant's entire argument related to this claim of error centers on the alleged improper admission of Dr. Bliss' expert testimony and report. As noted above, we conclude that the trial court did not err by qualifying Dr. Bliss as an expert witness and admitting her expert report. Accordingly, the trial court did not err in finding that Father sexually abused Child.

Order affirmed.[4]

_____

[4] Mother did not file a cross-appeal in this case and, therefore, we lack the authority to modify the trial court's order to award Mother the full relief she sought before the trial court. Nonetheless, we are very concerned that Father, who the trial court found sexually abused Child, may exercise six hours of physical custody every month and has shared legal custody of Child. We impress upon all individuals involved in this case that they have

*(Footnote Continued Next Page)*

Judge Moulton joins.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2017

---

*(Footnote Continued)*

both a moral and legal responsibility to ensure that Child is not abused by Father in the future.